# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:11-cv-494

| | |
|---|---|
| ROENA BERGMAN, Administrator of the Estate of STANLEY BERGMAN, Deceased, )<br><br>Plaintiff, )<br><br>v. )<br><br>SSC MONROE OPERATING COMPANY LLC (d/b/a Brian Center Health & Retirement/Monroe) *et al*, )<br>Defendants. )<br>) | ORDER |

THIS MATTER is before the Court on Defendant SSC Monroe Operating Company LLC's ("SSC Monroe") Motion to Compel Arbitration and Stay Proceedings (D.I. 7), SSC Monroe's Memorandum of Authorities in support of its Motion (D.I. 8), Plaintiff Roena Bergman's Response (D.I. 16), and SSC Monroe's Reply (D.I. 18).

## I. PROCEDURAL AND FACTUAL BACKGROUND

On August 22, 2011, Plaintiff filed this case in Superior Court in Union County, North Carolina. The case was removed to this Court on October 3, 2011.

Plaintiff, the surviving spouse of Stanley Bergman ("Mr. Bergman") and Administrator of the Estate of Stanley Bergman, claims that Mr. Bergman was admitted to the Brian Center, operated by Defendant SSC Monroe, on August 18, 2009. Complaint at ¶ 49. 18 days later, Mr. Bergman was discharged from Defendant's facility to Carolinas Medical Center ("CMC") with a pressure sore. *Id*. at ¶ 52. Mr. Bergman underwent an operation on his pressure sore, was subsequently admitted into an inpatient rehabilitation program at CMC, and then died on

September 22, 2009 allegedly as a result of the injuries he sustained at SSC Monroe's facility. *Id*. at ¶¶ 53-55.

Plaintiff alleges that Mr. Bergman, while under the care of the SSC Monroe facility, suffered from pressure ulcer wounds, infection, and dehydration. *Id.* at ¶¶ 56-64. Based on these allegations, Plaintiff asserts claims for negligence, malpractice, wrongful death, and punitive damages against SSC Monroe. *Id*. at ¶¶ 65-90, 111-125.

On October 7, 2011, Defendant SSC Monroe filed its Motion to Compel Arbitration. SSC Monroe further requested that this matter be stayed while arbitration is conducted. D.I. 7, 8. SSC Monroe attached to its Motion a copy of an "Agreement for Dispute Resolution Program" entered into between Roena Bergman and the SSC Monroe facility on August 19, 2009. D.I. 8, Exhibit B. The "Agreement for Dispute Resolution Program" bears the signatures of Roena Bergman and a facility employee. *Id.* Page 1 of the Agreement, in bold upper-case font, provides in pertinent part as follows:

> This Agreement is subject to arbitration disputes.
>
> By agreeing to have all disagreements resolved though the dispute resolution program, the parties agree to waive the right to a judge or jury trial and to have the dispute resolved through various steps, culminating in a decision by an arbitrator.

Defendant also attached to its Motion a copy of an "Advance Directive for Heath Care - Living Will" entered into by Stanley Bergman and Roena Bergman on December 18, 2003. D.I. 8, Exhibit C. Defendant claims that the "Advanced Directive for Health Care - Living Will" authorizes the Plaintiff to act on Mr. Bergman's behalf. Attached to Plaintiff's Response is a "General Power of Attorney" entered into on December 18, 2003 between Stanley Bergman, the

principal, and Roena Bergman, the agent, which appoints the Plaintiff to act as Mr. Bergman's attorney in fact to, among other things, "sign... contracts" on Mr. Bergman's behalf. D.I. 16, Exhibit 1.

In her brief, Plaintiff opposes Defendant's Motion on grounds that: (1) Ms. Bergman could not bind Mr. Bergman, his estate, and his wrongful death beneficiaries to an arbitration agreement that waives their constitutional right to a jury trial; (2) Mr. Bergman should have signed the arbitration agreement because he was physically able to do so; (3) the arbitration agreement lacks mutuality of intent because it lacks the signature of two facility witnesses; (4) there is no capacity to bind the Estate or wrongful death beneficiaries to the arbitration agreement; (5) the agreement fails for lack of consideration and lack of mutuality of intent regarding the arbitration forum; and (6) the Defendant does not explain how it can expect to send its case to arbitration and leave its co-defendants proceeding in a trial court proceeding.

SSC Monroe's reply addresses Plaintiff's arguments, clarifies some of the authority cited by Plaintiff in her response brief, and argues that the claims made by the Plaintiff in this action are the type of claims covered by the "Agreement for Dispute Resolution Program".

Defendant's Motion has been fully briefed and is, therefore, ripe for determination.

## II. DISCUSSION OF CLAIMS

The Federal Arbitration Act ("FAA") establishes a federal policy favoring the enforcement of written agreements to arbitrate. Specifically, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to stay the proceeding and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. 9 U.S.C. § 3. The Court must compel arbitration even if the disputed claims are

exempted from arbitration or otherwise considered nonarbitrable under state law. *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (state statute that required litigants to be provided a judicial forum for resolving wage disputes "must give way" to Congress' intent to provide for enforcement of arbitration agreements); *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 90 (FAA preempts state law barring arbitration of certain claims).

The Supreme Court has held that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "Pursuant to that liberal policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25; *see also Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001); *Long v. Silver*, 248 F.3d 309, 315-16 (4th Cir. 2001); *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273-74 (4th Cir. 1997).

The Fourth Circuit stated that: "[t]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. Thus, we may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Long*, 248 F.3d at 315-16 (internal citations omitted). On the other hand, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also AT&T Technologies, Inc. v.*

*Communications Workers*, 475 U.S. 643, 648 (1986); *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir. 1998); *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997).

Therefore, prior to determining the scope of an arbitration agreement, the Court must determine that a valid agreement to arbitrate exists between the parties by applying "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Specifically, "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract." *Gilmer*, 500 U.S. at 33 (internal quotations and citations omitted). For instance, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [9 U.S.C.] § 2." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Arbitration, as it is on the federal level, is favored in North Carolina. *Tillman v. Commer. Credit Loans, Inc.*, 655 S.E.2d 362, 369 (N.C. 2008) (citing *Cyclone Roofing Co. v. David M. LaFave Co.,* 321 S.E.2d 872, 876 (N.C. 1984). In North Carolina, "[a] two-part analysis must be employed by the court when determining whether a dispute is subject to arbitration: (1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement." *Munn v. Haymount Rehab & Nursing Ctr., Inc.,* 704 S.E.2d 290, 294 (N.C. Ct. App. 2010). Additionally, "[t]he law of contracts governs the issue of whether there exists an agreement to arbitrate"... and "the party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes." *Id*. (citing *Harbour Point v. DJF Enters.,* 688 S.E. 2d 47, 50 (citations and quotation marks omitted).

In the present case, the Plaintiff signed the arbitration agreement in question and Defendant SSC Monroe is seeking to enforce that agreement. Plaintiff Roena Bergman clearly had the authority to sign, on behalf of Stanley Bergman, the agreement in question in light of the "General Power of Attorney" that she entered into with her late husband on December 18, 2003. The fact that the "General Power of Attorney" was not presented to the Brian Center at the time that Roena Bergman signed the "Agreement for Dispute Resolution Program" does not vitiate her power to enter into such an agreement on behalf of Mr. Bergman. Furthermore, the Plaintiff's act of signing the agreement is sufficient to establish that the "Agreement for Dispute Resolution Program" is a valid agreement to arbitrate because North Carolina law generally requires that a contract must only be signed by the party to be charged or by some other person lawfully authorized. *See, e.g. River Birch Assoc. v. City of Raleigh*, 388 S.E.2d 538, 551 (N.C. 1990); *Carlton v. Anderson*, 173 S.E.2d 783, 784 (N.C. 1970). Nothing on the record before this Court indicates that the "Agreement for Dispute Resolution Program" is invalid.

The specific disputes at issue before this Court falls within the substantive scope of the "Agreement for Dispute Resolution Program." The Plaintiff's claims against SSC Monroe include negligence, malpractice, wrongful death, and a claim for punitive damages. The plain language of the "Agreement for Dispute Resolution Program" does not exclude these claims from arbitration. The "Agreement for Dispute Resolution Program" excludes only a "claim or dispute involving solely a monetary claim in an amount less than $50,000.00." In order for this case to proceed against the Defendants in federal court, the case must satisfy all the requirements for diversity jurisdiction including the mandate of 28 U.S.C. § 1332 that the amount in controversy exceeds the sum of $75,000.000, exclusive of costs and interest. The Complaint alleges that Plaintiff has been damaged in an amount "in excess of $10,000 in compensatory

damages and in excess of $10,000 in punitive damages against each Defendant." If this amount is aggregated against SSC Monroe Operating Company LLC and the nine (9) other LLC's against which Plaintiff brought suit and which constitute SSC Monroe Operating Company LLC's corporate structure (D.I. 1 at ¶¶ 3-5), then Plaintiff's monetary claim against SSC Monroe Operating Company LLC's overall corporate structure amounts to at least $200,000.

In sum, this Court finds that Defendant SSC Monroe has shown that the parties reached a valid agreement to arbitrate and that the specific dispute falls within the scope of that agreement. *Munn,* 704 S.E.2d at 294. This Court also finds that, here, there are no generally applicable contract defenses that may be applied to invalidate the arbitration agreement. *Casarotto*, 517 U.S. at 687.

Accordingly, for the reasons set forth herein, the Motion to Compel Arbitration and Stay Proceedings is GRANTED. The claims against Defendant SSC Monroe Operating Company LLC are referred to arbitration per the terms of the "Agreement for Dispute Resolution Program" made between the parties. This action, including any discovery, is stayed pending the outcome of arbitration.

**IT IS SO ORDERED**

Signed: December 16, 2011

*Graham C. Mullen*
Graham C. Mullen
United States District Judge